IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAMADOU SALIOU DIALLO | : | |
| | : | |
| Petitioner, | : | 3:26-cv-395 |
| | : | (JUDGE MARIANI) |
| v. | : | |
| | : | |
| CRAIG LOWE, in his Official Capacity | : | |
| as Warden of the Pike County | : | |
| Correctional Facility et al., | : | |
| | : | |
| Respondents. | : | |

FILED
SCRANTON

MAR 0 3 2026

PER _____
DEPUTY CLERK

## MEMORANDUM OPINION

### I.    FACTUAL BACKGROUND

On February 17, 2026, Petitioner Mamadou Saliou Diallo, a citizen of Guinea residing in the United States since November 2023, with no criminal record and a pending asylum application, filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Petitioner is currently detained at the Pike County Correctional Facility within the Middle District of Pennsylvania. (Id., ¶ 1). The Petition names as Respondents: Craig Lowe, Warden of the Pike County Correctional Facility; Michael T. Rose, Acting Field Office Director of Enforcement and Removal Operations, Philadelphia Field Office, Immigration and Customs Enforcement; Kristi Noem, Secretary of the United States Department of Homeland Security; and Pamela Bondi, United States Attorney General.[1] (Id., ¶¶ 8-17).

---

1    Petitioner also names as Respondents: (1) Todd Lyons, Acting Director, Immigration and Customs Enforcement; (2) Daren K. Margolin, Director of the Executive Office for Immigration; (3) U.S. Immigration

Prior to his detention, Petitioner had lived in the Reading area and has resided in the United States since on or about November 16, 2023. (*Id.*, ¶ 30). Petitioner alleges he is a bona fide asylum seeker "who experienced political persecution in Guinea due to his opposition to the current Guinean government and his membership in a party in opposition to the government of Guinea." (*Id.*, ¶¶ 2, 28).

Petitioner entered the United States without inspection in November 2023 to seek asylum. (*Id.*, ¶ 30). Petitioner was released into the United States on his own recognizance and thereafter moved to Pennsylvania where he filed his asylum claim in 2024. (Doc. 1, ¶¶ 30, 31). Following his release and parole, Petitioner "regularly attended routine supervision appointments with immigration officials" and "did not miss any appointments or violate the terms of his release whatsoever." (*Id.*, ¶ 31). Petitioner's asylum claim appears to have been denied by an Immigration Judge, though Petitioner has not yet been afforded the opportunity to appeal. (*Id.*, ¶ 2). Nevertheless, Respondents took Petitioner into custody during a routine supervision appointment on September 23, 2025, in Philadelphia. (*Id.*, ¶¶ 35, 36). Petitioner "has never engaged in criminal activity and has no history of conduct suggesting danger to the community." (*Id.*, ¶ 34). On the contrary, Petitioner alleges "he has demonstrated deep respect for lawful authority and a consistent willingness to participate in legal proceedings and comply with all conditions of supervision." (*Id.*).

---

and Customs Enforcement; (4) U.S. Department of Homeland Security; (5) U.S. Department of Justice; and (6) U.S. Executive Office for Immigration Review. (Doc. 1, ¶¶ 8-17).

Because Petitioner is charged with having entered the United States without inspection, the Department of Homeland Security has denied or will deny Petitioner release from immigration custody, consistent with a new DHS policy issued on July 8, 2025, instructing all Immigration and Customs Enforcement employees to consider anyone inadmissible under § 1182(a)(6)(A)(i)—i.e., those who entered the United States without admission or inspection—subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond. In addition, on September 5, 2025, the Board of Immigration Appeals issued a precedential opinion holding that an Immigration Judge has no authority to consider bond requests for any person who entered the United States without admission. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025)). The Board of Immigration Appeals determined that such individuals are subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond.

Petitioner alleges he is being unlawfully detained by Respondents without a bond hearing under the mandatory detention provision of the INA, 8 U.S.C. § 1225(b)(2)(A), instead of the discretionary detention provision of the INA, 8 U.S.C. § 1226(a). This distinction matters because noncitizens detained pursuant to 8 U.S.C. § 1225(b)(2)(A) are not entitled to a bond hearing, whereas noncitizens detained pursuant to 8 U.S.C. § 1226(a) are entitled to a bond hearing before an Immigration Judge. *Patel v. O'Neil*, 2025 WL 3516865, at *2 (M.D. Pa. Dec. 8, 2025) (citations omitted).

As directed by the Court, the Respondents filed a response to the Petition on February 23, 2026. (Doc. 3). On February 25, 2026, Petitioner filed a reply to Respondents' response. (Doc. 5).

The Respondents do not dispute the factual allegations contained in the Petition. Rather, they set forth legal arguments as to why Petitioner's detention is lawful under 8 U.S.C. § 1225(b)(2). But, as discussed more fully below, Respondents' interpretation of the INA—the same one they advance here—has already been rejected by this Court and the overwhelming majority of federal judges to address this issue. *See Patel*, 2025 WL 3516865, at *4 n.7 (M.D. Pa. Dec. 8, 2025 (collecting cases).

## II.   STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2241, a federal district court may grant a habeas petition where a petitioner's immigration detention is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). It is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody. *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972) (citations omitted); *accord Patel*, 2025 WL 3241212, at *2.

## III.   ANALYSIS

### A. This Court Has Jurisdiction Over Petitioner's Habeas Petition.

Before addressing the merits, the Court must first address Respondents' previous position that the Court lacks jurisdiction to grant the writ. Although Respondents do not

4

seek dismissal of the Petition on jurisdictional grounds, Respondents have in prior habeas petitions directed the Court to three subparagraphs of the INA: 8 U.S.C. §§ 1252(g), 1252(b)(9), and 1252(a)(2)(B)(ii) which they claim divest this Court of jurisdiction to hear habeas petitions.[2] The Court need not dwell on the jurisdictional issues because it has previously rejected Respondents' jurisdictional arguments, and federal district courts to consider this issue have almost universally held that they have jurisdiction to consider habeas petitions like the one filed by Petitioner. In short, Section 1252(g) does not apply since Petitioner "does not attempt by this petition to address the commencement, adjudication, or execution of removal orders and their proceedings."[3] *Soumare v. Jamison*, 2025 WL 3461542, at *2 (E.D. Pa. Dec. 2, 2025) (citing *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (jurisdiction stripping under § 1252(g)(2) applies "only to [these] three discrete actions")); *see also Demirel v. Fed. Det. Ctr. Philadelphia*, 2025 WL 3218243, at *3 (E.D. Pa. Nov. 18, 2025) (Section 1252(g) does not bar jurisdiction because the petitioner "seeks a bond hearing; he does not challenge the commencement, adjudication, or execution of his removal (which may not even occur)").

---

[2] Respondents now acknowledge that "[t]he Court does have jurisdiction to decide detention issues" raised in the Petition. (Doc. 3 at 15 n.6).

[3] Section 1252(g) of the INA provides, in relevant part, that: "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

5

Section 1252(b)(9) also does not divest this Court of jurisdiction over the habeas petition, because it "does not reach claims that are independent of, or wholly collateral to, the removal process."[4] *E.O.H.C. v. Sec'y United States Dept. of Homeland Sec.*, 950 F.3d 177, 186 (3d. Cir. 2020) (internal citation and quotation marks omitted). Moreover, § 1252(b)(9) "does not strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal." *Id.* ("If 'later' is not an option, review is available now."); *see also Demirel*, 2025 WL 3218243, at *3 ("Later is not an option here, because the Court of Appeals could not 'meaningfully' redress Demirel's purported unlawful denial of release on bond should his final removal be ordered."). The same logic applies here: later is not an option here because the Court of Appeals could not meaningfully address Petitioner's unlawful detention without a bond hearing.[5]

---

[4] Section 1252(b)(9) of the INA provides, in relevant part, that "Judicial review of all questions of law and fact, including the interpretation and application of constitutional or statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). These claims must be filed "with an appropriate court of appeals." *Id.* § 1252(a)(2)(D).

[5] The Third Circuit recent opinion in *Khalil v. President, United States*, 164 F.4th 259 (3d Cir. 2026), interpreting 8 U.S.C. § 1252(b)(9), does not divest this Court of jurisdiction. The Court agrees with other district courts that have addressed this issue and concludes that *Khalil* and 8 U.S.C. § 1252(b)(9) do not divest this court of jurisdiction to rule on Petitioner's habeas petition. *See Giyosov v. Jamison*, 2026 WL 209839, at *1 (E.D. Pa. Jan. 27, 2026) ("The Court concludes that *Khalil* is distinguishable because [petitioner's] petition does not present legal or factual questions that can be meaningfully reviewed alongside review of a final order of removal."); *Kourouma v. Jamison*, 2026 WL 120208, at *3 (E.D. Pa. Jan. 15, 2026) ("Unlike the challenge to detention in *Khalil*, Petitioner's challenge here is not 'inextricably linked' to his removal proceedings."). The same logic applies here: *Khalil* does not divest this Court of jurisdiction over Petitioner's habeas petition because his challenge is not "inextricably linked" to his removal proceedings and the Petition does not present factual and legal issues that can be meaningfully reviewed along with a final order of removal.

And section 1252(a)(2)(B)(ii) is inapposite because the Respondents' "statutory detention power is 'not a matter of discretion' to which § 1252(a)(2)(B)(ii) applies."[6] *Soumare*, 2025 WL 3461542, at *2 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)); *see also Demirel*, 2025 WL 3218243, at *3 ("Section 1252(a)(2)(B)(ii) thus also does not apply here."). In sum, 8 U.S.C. §§ 1252(g), 1252(b)(9), and 1252(a)(2)(B)(ii) do not divest this Court of jurisdiction to hear Petitioner's habeas petition.

In addition, although Respondents no longer appear to be advancing an exhaustion of administrative remedies argument, the Court feels it prudent to nevertheless address exhaustion as it has been raised by the Respondents in numerous similar petitions. While habeas petitioners are "ordinarily required to exhaust their administrative remedies," *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996), they "need not exhaust administrative remedies where the issue presented involves only statutory construction." *Vasquez v. Strada*, 684 F.3d 431, 434-35 (3d Cir. 2012). Moreover, exhaustion of administrative remedies is also not required when doing so would be futile. *Demirel*, 2025 WL 3218243, at *4. Because the Board of Immigration Appeals in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) "predetermined the statutory issue" Petitioner "has no reasonable prospect of obtaining relief through administrative remedies." *Demirel*, 2025 WL

---

[6] Section 1252(a)(2)(B)(ii) of the INA provides, in relevant part, that "no court shall have jurisdiction to review . . . any other decision or action by the Attorney General or Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii).

7

3218243, at *4 (internal citation and quotation marks omitted). Accordingly, the Petition will not be dismissed for failure to exhaust administrative remedies.

## B. The Court Will Grant Petitioner's Habeas Petition.

Turning to the merits of the Petition, the Court will first consider the two statutory provisions of the INA at issue. 8 U.S.C. § 1225 is a statute entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." It provides, in relevant part:

> **(b) Inspection of applicants for admissions**
>   **(2) Inspection of other aliens**
>     **(A) In General**
>     Subject to subparagraph (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a [removal proceedings] of this title.

8 U.S.C. § 1225(b)(2)(A). 8 U.S.C. § 1226, in contrast, is entitled "Apprehension and detention of aliens." It provides, in relevant part:

> **(a) Arrest, detention, and release**
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>   (1) may continue to detain the arrested alien; and
>   (2) may release the alien on—
>     (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>     (B) conditional parole; but
>   (3) may not provide the alien with work authorization (including an 'employment authorized' endorsement or other appropriate work permit), unless the alien

8

> is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

8 U.S.C. § 1226(a). Respondents are currently detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A). It is undisputed that Petitioner has not been charged with or convicted of a criminal offense, does not have a final order of removal, and his asylum application is currently pending before an Immigration Judge with a merits hearing scheduled for 2029.

As the Court previously found, "the overwhelming majority of federal district courts that have addressed this issue have interpreted the INA to find that persons similarly situated to Petitioner—noncitizens who previously entered the United States and are currently residing in the United States—are not subject to the mandatory detention provision of 8 U.S.C. § 1225(b)(2)(A) but instead are subject to the discretionary detention pursuant to 8 U.S.C. § 1226(a) and accordingly are entitled to a bond hearing." *Patel*, 2025 WL 3519895, at *4 (collecting cases). "These courts have further found that the statutory provisions of the INA that Respondents' claim divest this Court of jurisdiction do not apply to persons similarly situated to Petitioner and that there is no need to exhaust administrative remedies prior to filing a habeas petition." *Id.*

As before, "the Court finds that the near universal rejection of Respondents' interpretation of the INA by federal district courts to be highly persuasive and will adopt the same approach." *Id.* at *5. Petitioner's detention under 8 U.S.C. § 1225(b)(2)(A) is unlawful under the INA because the plain language of this provision and the statutory framework of the INA compels a finding that § 1225(b)(2)(A) applies only to noncitizens who are

9

affirmatively seeking admission to the United States, not noncitizens like Petitioner who have resided in the United States for years.[7] *See Bethancourt Soto*, __ F. Supp. 3d __, 2025 WL 2976572, at *7 ("For all these reasons, the Court concludes that § 1225(b)(2)(A) applies only to noncitizens who are actively, *i.e.*, affirmatively, 'seeking admission' to the United States. Accordingly, it does not apply to individuals like Petitioner, who has been residing in the United States 'for over seven years.'"); *see also Patel*, 2025 WL 3516865 at *5 (same).

Like other Courts to address this issue, the Court finds that Respondents' interpretation of the phrase "seeking admission" violates the rule against surplusage, would negate the plain meaning of the text, and make redundant Section 1226(c) mandatory detention of noncitizens who have committed or are charged with certain specified crimes. *See Centeno Ibbara*, 2025 WL 3294726, at *5-6 ("The government's interpretation of § 1225(b)(2) violates the rule against surplusage. If 'an applicant seeking admission' is the same as 'an applicant for admission,' then 'seeking admission' is surplusage. Congress has also recently adopted provisions in § 1226 that would be made superfluous under the

---

[7]   The Supreme Court has also acknowledged that 8 U.S.C. § 1226 "generally governs the process of arresting and detaining ... **aliens already in the country pending the outcome of removal proceedings**." *Jennings v. Rodriguez*, 583 U.S. 281, 288-89 (2018) (emphasis added); *Id.* at 303 ("As noted, § 1226 applies to aliens already present in the United States.").

In addition, despite the Board of Immigration Appeals holding in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), that 8 U.S.C. § 1225(b)(2)(A) applies to noncitizens like Petitioner, "[t]his Court owes no deference to an agency's interpretation that conflicts with the statute's unambiguous text." *Bethancourt Soto v. Soto*, __ F. Supp. 3d __, 2025 WL 2976572, at *7 (D.N.J. Oct. 22, 2025) (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400-01 (2024)).

government's interpretation. If a noncitizen enters the country illegally and is subsequently convicted or charged with certain crimes, these new provisions require that noncitizens be detained without a bond hearing. Under the government's interpretation, § 1225 would require such mandatory detention regardless of criminal charges or conviction. If this was the case, Congress would have no need to create additional requirements for mandatory detention."). Here, Petitioner is not affirmatively "seeking admission" into the United States. He did so in 2023 and was released into the United States on his own recognizance in order to pursue his asylum claim. Because Petitioner is not currently "seeking admission" into the United States, Section 1225(b)(2)(A) does not apply to him.[8]

As for Petitioner's constitutional arguments, it is undisputed that Petitioner is entitled to the protections of the Fifth Amendment's due process clause. *See Zadvydas*, 533 U.S. at 693 ("But once an alien enters the country, the legal circumstances change, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

Applying the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 325 (1976) to the mandatory detention without a bond hearing at issue here, the Court must weigh three factors: (1) the "private interest that will be affected by the official action"; (2) "the risk of an

---

[8] The Court acknowledges that Respondents cite to the Fifth Circuit's recent decision in *Buenrosto-Mendez v. Bondi*, __ F.4th __, 2026 WL 323330 (5th Cir. 2026), in which the Fifth Circuit—in a 2-1 decision—held that noncitizens like Petitioner were "applicants for admission" to the United States who were "seeking admission" and were thus subject to the INA's mandatory detention provision. The Fifth Circuit's ruling is not binding on this Court. Moreover, the Court finds as persuasive Judge Douglas's dissent.

11

erroneous deprivation of such interest through procedure used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Id.* 424 U.S. at 335. The first factor weighs heavily in Petitioner's factor, as the "official action" has deprived him of his physical liberty. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (noting "the most elemental of liberty interest—the interest in being free from physical detention."). As for the second factor, the Court further finds this factor weighs heavily in Petitioner's favor "as he is presently and *erroneously* detained under the mandatory detention provisions of § 1225, without an opportunity for a bond hearing." *Bethancourt Soto*, __ F. Supp. 3d __, 2025 WL 2976572, at *8 (emphasis in original). Lastly, the Court notes the Government has an interest in detaining noncitizens to ensure "the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690. However, this factor still weighs in Petitioner's favor because Respondents do not dispute that Petitioner has no criminal record, was released on his own recognizance, has not missed any appointments with immigration authorities, and the Respondents have not claimed that Petitioner poses a danger or is a flight risk. Accordingly, the Court further finds that Petitioner's mandatory detention without a bond hearing pursuant to 8 U.S.C. § 1225(b)(2)(A) further violates his procedural due process rights under the Fifth Amendment. *See Bethancourt Soto*, __ F. Supp. 3d __, 2025 WL 2976572, at *8 ("Taken together, the

Court finds the *Mathews* factors weigh decisively in Petitioner's favor, and as such his mandatory detention under § 1225(b)(2)(A) violates his procedural due process rights.") (citations omitted).

Under the Respondents' approach, Petitioner and those noncitizens residing in the United States who have not committed, or been charged with, a specified crime under the INA could be lawfully detained without a bond hearing consistent with constitutional requirements from the time the Immigration Judge denied Petitioner's asylum application in until some future date when the Board of Immigration Appeals rules on his pending appeal. And likely for a period much longer, despite Respondents' claims that the detention is only "temporary." This prolonged and indefinite detention would continue if Petitioner exercised his right to appeal the forthcoming decision on his asylum application. Further, Respondents' approach would be inconsistent with the Supreme Court's decision in *Zadvydas* (which considered the indefinite detention of the petitioner *after a final removal order* and finding fewer than six months detention is presumed to be constitutional) and would violate both the INA and Petitioner's due process rights by depriving him of his liberty without due process of law. Importantly, Respondents do not dispute that there is no final removal order for Petitioner. Accordingly, the Court will grant Petitioner's habeas petition because his detention under § 1225 is unlawful.

Petitioner's request for fees and costs under the Equal Access to Justice Act will be held in abeyance in order to permit Respondents the opportunity to argue that its position in

13

this proceeding was "substantially justified." "Under the EAJA, the Government's position was substantially justified only if its conduct was justified to a degree that could satisfy a reasonable person." *Michelin v. Warden Moshannon Valey Corr. Cent.*, __ F. 4th__, 2026 WL 263438, at *11 (3d Cir. Feb. 2, 2026) (allowing fees under EAJA in immigration habeas proceedings under 28 U.S.C. § 2241). "The Government bears the burden of proving its position was justified." *Id.* Accordingly, the Court will order Petitioner's counsel to file a fee petition and brief and will defer ruling on the fee petition until the completion of the parties' briefing.

## IV.   CONCLUSION

For the foregoing reasons, Petitioner's habeas petition will be granted because his mandatory detention under 8 U.S.C. § 1225(b)(2)(A) without a bond hearing is unlawful and violates both the INA and the Fifth Amendment's procedural due process clause. Because the Respondents maintain that a bond hearing is not required and the Respondents' interpretation is inconsistent with the INA, Respondents will be directed to immediately release Petitioner Diallo from the custody of Respondent Craig Lowe, Warden of Pike County Correctional Facility, and file a declaration or affidavit pursuant to 28 U.S.C. § 1746 confirming that Petitioner Diallo has been released from custody. *See Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (acknowledging that a habeas court has "the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted.");

see also *Bethancourt Soto*, 2025 WL 2976572, at *9 (ordering immediate release); *Flores Obando*, 2025 WL 3452047, at *3 (same); *Kashranov*, 2025 WL 3188399, at *8 (same); *Patel*, 2025 WL 3516865, at *6 (same).

Respondents will further be permanently enjoined from detaining Petitioner under 8 U.S.C. § 1225. *See Bethancourt Soto*, 2025 WL 2976572, at *9 (permanently enjoining respondents from detaining petitioner under § 1225 where petitioner did not file a motion for temporary restraining order or motion for preliminary injunction); *see also Maldonado*, 2025 WL 2985256, at *7 ("The Court grants the writ of habeas corpus and orders Respondents to release Petitioner within 24 hours. . . . Following Petitioner's release, Respondents are permanently enjoined from rearresting or otherwise detaining Petitioner under § 1225(b)(2)."); *Patel*, 2025 WL 3516865, at *7. If Respondents elect to later detain Petitioner under 8 U.S.C. § 1226, the Respondents must provide Petitioner Diallo with notice and an opportunity to be heard at a timely individualized bond hearing, where an Immigration Judge will assess whether he is a danger or flight risk. A separate Order follows.

Robert D. Mariani
United States District Judge